**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **E.S., E.C., K.S., L.S., and A.S.**

**No. 21-0118** (Harrison County 18-JA-92-3, 18-JA-93-3, and 19-JA-26-3)

## MEMORANDUM DECISION

Petitioner Father J.S., by counsel Ryan C. Shreve, appeals the Circuit Court of Harrison County's February 10, 2021, order terminating his parental and custodial rights to E.S., E.C., K.S. and A.S. and his custodial rights to L.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Julie N. Garvin ("guardian"), filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights to the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2011, the DHHR filed a child abuse and neglect petition against the mother and her then husband alleging that the mother locked then four-year old E.S. and then two-year old E.C. in their bedrooms for extended periods of time. After the mother failed to comply with services, the DHHR removed the children from her home. Ultimately, the circuit court reunified the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). E.S. and E.C. were at issue below but are not on appeal. Petitioner was the stepfather and pre-petition custodian of these children, but he asserts no assignment of error in regard to the circuit court's order as it relates to these children.

children with the mother, and terminated E.S.'s father's parental rights and E.C.'s father's custodial rights to those children.

In September of 2018, the DHHR alleged that then eleven-year-old E.S. disclosed to a CPS worker that he was afraid to return home because petitioner (E.S.'s stepfather) told him that he would kill the child "with [the] swords" in their garage if the child was at home when petitioner returned from work. E.S. further disclosed that he forgot to feed the family cat and, as punishment, his parents "put him on a duct tape square in the basement" and monitored him with security cameras to ensure he remained in the square. He reported that he was required to be in the square from the time he returned home from school until eight o'clock in the evening, when he was sent to bed. The child reported that petitioner told him that he did not deserve to live in the house, that he was not part of the family, and that he was a bad son. Moreover, the child described being struck with a belt between eight to thirteen times in a single instance for discipline. Further, the DHHR alleged that E.S.'s mother tested positive for marijuana while pregnant with newborn K.S. The DHHR asserted that the mother refused to stop smoking marijuana, despite breastfeeding K.S. The DHHR alleged that petitioner was aware of the mother's substance abuse and failed to protect K.S. Finally, the DHHR alleged that petitioner exercised partial custody of L.S., and L.S.'s mother was a nonabusing parent. L.S. remained in his mother's custody throughout the proceedings. Petitioner waived his preliminary hearing.

The DHHR filed an amended petition in November of 2018. It alleged that L.S. reported witnessing petitioner fight with the mother on multiple occasions. The DHHR also alleged that petitioner was participating in therapy with L.S. Petitioner's affect during therapy was observed to be "extremely flat" and he did not significantly interact with L.S. Further, the DHHR alleged that E.S. participated in a psychological evaluation, and the evaluator diagnosed the child with post-traumatic stress disorder ("PTSD"), major depressive disorder, social exclusion or rejection, and "possible" attention deficit hyperactivity disorder ("ADHD"). During the evaluation, E.S. disclosed that he was the victim of significant physical abuse, including petitioner "chok[ing] him and pick[ing] him up by his neck." The evaluator noted that E.S. seemed preoccupied with personal safety and fears of death, demonstrated in part by a heightened physiological and psychological response to knives. Finally, the DHHR alleged that E.C. reported domestic violence in her home, that she was physically and emotionally abused by petitioner, and that she saw petitioner abuse E.S. and L.S. E.C.'s therapist diagnosed the child with PTSD and dissociative symptoms.

Later in November of 2018, the circuit court convened an adjudicatory hearing. Petitioner stipulated that he subjected the children to excessive physical and emotional discipline, which resulted in emotional abuse. Petitioner also stipulated that he used illegal substances while the children were in the home and that he was aware of the mother's illegal substance use while she was breastfeeding K.S. The circuit court adjudicated petitioner as an abusing parent upon his stipulation.

Petitioner moved for a post-adjudicatory improvement period, which was granted in December of 2018, and he later was granted an extension to his improvement period. A.S. was born in July of 2019, and the DHHR named the child as an infant respondent in August of 2019. In November of 2019, petitioner was granted a post-dispositional improvement period. In total,

petitioner was granted fifteen months to participate in remedial services and improve his parenting during these proceedings.

In August of 2020, the circuit court held the final dispositional hearing. The circuit court heard evidence regarding E.C.'s continued therapy and received in camera testimony from E.C. E.C.'s therapy focused on a history of trauma, including physical abuse and neglect and her witnessing domestic violence. The child recounted that she and E.S. were "smacked" by petitioner and the mother and belittled by them. E.C. testified that when petitioner was home, "he would always find a reason to go smack on you or something" and stated that this occurred "every day." E.C. also reported that she was left in the home alone to supervise the other children and that the home had insufficient food. She reported no positive feelings towards petitioner.

The circuit court heard evidence that E.S. was in a residential placement. Then thirteen-year-old E.S. was reportedly functioning at a seven- or eight-year-old level and he had difficulty regulating his emotions when he felt unsafe or insecure. He "indicated trauma" to his therapist but was not willing or able to address or describe it at the time; he would only say that something happened to him. The child's therapist believed that addressing E.S.'s trauma could be a lengthy process and recommended that the child complete treatment without disruption. The circuit court found that E.S. and E.C. had suffered extensive psychological harm and had progressed "only a little in recovering from their traumas."

The court heard testimony from L.S.'s therapist, who had been treating L.S. for two years. The therapist testified that petitioner attended only two therapy sessions during the proceedings. The therapist believed that L.S. loved petitioner but avoided talking about him and had not stated that he wanted to return to petitioner's care. Due to petitioner's depression, L.S. often provided prodding and care for petitioner. The therapist recommended that L.S. have only supervised contact with petitioner in the future due to their limited contact.

Ultimately, the circuit court decided that termination of petitioner's parental and custodial rights was the least restrictive disposition as to all of the children, except L.S, to whom the court terminated only petitioner's custodial rights. The court explained that it found clear and convincing evidence that E.S. and E.C. were the victims of physical and emotional abuse, which placed the other children in the home at risk of abuse. Regarding petitioner's improvement period, the circuit court determined that he participated in all services recommended by the DHHR. However, the circuit court found that while petitioner admitted that he spanked the children, yelled at them, and showed aggression, he did not acknowledge the extent of the trauma he caused the children. For example, petitioner testified that his discipline did not rise to the level of "beating on" the children. The court found that he downplayed the excessive discipline and failed to grasp that he abused the children. The court further found that "despite being afforded numerous improvement periods, [petitioner] displayed little insight into the underlying issues which gave rise to the [p]etitions" and that petitioner's continued lack of insight placed the children's safety and welfare at risk. Therefore, the circuit court found that petitioner had not made sufficient progress to justify the return of the children because he continued to minimize the conditions alleged in the petitions. Because petitioner was unwilling or unable to acknowledge the physical and emotional abuse of the children, the circuit court concluded that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially

3

corrected in the near future and that termination of petitioner's parental and custodial rights was in the children's best interests. Petitioner now appeals the circuit court's February 10, 2021, order, terminating his parental and custodial rights to the children.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights to K.S. and A.S. and his custodial rights to L.S. and erred in finding that there was no reasonable likelihood that he could correct the conditions of neglect and abuse in the near future. He asserts that the DHHR placed excessive emphasis on the fact that he had not progressed to unsupervised visitations with the children because the COVID-19 pandemic limited visitation options in March of 2020. Petitioner acknowledges that he testified he needed additional services prior to reunification with the children, but he argues that the circuit court misinterpreted this testimony. In petitioner's view, this testimony is consistent with a parent that is aware of his deficiencies and is making progress. Petitioner asserts that the least restrictive dispositional alternative would be to dismiss the child abuse and neglect petition and order continued supervision. *See* W. Va. Code § 49-4-604(c)(4). We find petitioner is entitled to no relief.

Significantly, petitioner does not address the circuit court's finding that he failed to acknowledge the conditions of abuse and neglect. This Court has held that

---

[2]The circuit court also terminated the parental and custodial rights of the mother of E.S., E.C., K.S., and A.S. The permanency plan for E.C., K.S., and A.S. is adoption in their current foster placement. The permanency plan for E.S. is adoption or legal guardianship following his completion of residential treatment. Finally, L.S.'s mother was a nonabusing parent, and the child has achieved permanency in her care.

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The record supports the circuit court's finding that petitioner failed to acknowledge the extent of the abuse and neglect he inflicted on the children. Although petitioner testified that he exercised inappropriate discipline of the children, he continued to deny that it rose to the level of "beating on" them. To the contrary, E.C. testified that petitioner "smacked" her and E.S. "every day." She further testified that petitioner belittled her and her siblings. Despite extensive services, the circuit court found that petitioner downplayed the excessive discipline, failed to grasp that he abused the children, and displayed little insight into the underlying issues of abuse and neglect.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental and custodial rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) provides that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." The evidence that petitioner failed to acknowledge the conditions of abuse and neglect establishes that he could not correct those conditions because the problem was untreatable. Regardless of petitioner's compliance with services, this evidence definitively establishes that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.

Furthermore, the circuit court found that the children (with the exception of L.S.) had been in foster care for twenty-three months. It further found that the children needed permanency and consistency that petitioner could not reasonably provide in the near future. Therefore, termination of petitioner's parental and custodial rights was necessary for the children's welfare to provide permanency to the children.

Finally, this Court has held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future due to petitioner's failure to acknowledge the conditions of abuse and neglect, we find no error in the circuit court's termination of petitioner's parental and custodial rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 10, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton